# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA

## PENSACOLA DIVISION

BOBBY WILLIAMS,

      Plaintiff,

v.                                          Case No. 3:04cv93/LAC

AIR PRODUCTS & CHEMICALS, INC.,

      Defendant.

_____/

## ORDER ON SUMMARY JUDGMENT

Pending before the Court is Defendant's Motion for Summary Judgment and documents in support thereof (Docs. 48-49). Plaintiff timely filed a memorandum and evidentiary materials in opposition (Docs. 53-56). The Court has taken the matter under advisement (Doc. 50) and is now prepared to rule on Defendant's motion. For the reasons stated below, Defendant's Motion for Summary Judgment is granted in part and denied in part.

## I. BACKGROUND

Plaintiff raises claims of employer discrimination and retaliation based on his race and his exercise of leave under the Family Medical Leave Act (FMLA).  Plaintiff was employed with Defendant Air Products at its facility in Pace, Florida, since 1997, where he worked a four or five day truck route traveling across many parts of the country.  Plaintiff commuted to work from his residence in Slidell, Louisiana.  Plaintiff was married to Silvia Shoemaker, who resides in Pensacola, Florida, and the couple had a son, Arnez, in September of 2001.  The couple divorced before the birth, however, and Plaintiff remarried in February of 2002.  During April of 2002, Arnez required open heart surgery, following which he was returned to his mother's house to recuperate.

At some point before Arnez's surgery, Plaintiff requested from his supervisor Carl Reuter that he be allowed to take a leave of absence based on his son's medical condition.  (Compl. ¶ 7; Answer ¶ 7).  Plaintiff's version of this conversation, which Defendant accepts for purposes of this motion, is as follows:

> [I told Reuter] I think I'm going to need some Family Medical Leave here.  My son is having an open heart surgery.  I explained that the blood in his heart was dumping to one side making it lopsided, and that it was definitely if he didn't have this surgery, he would die.
>                                    . . .
> I told him I would need the Family Medical Leave time.  If his condition didn't get better, then I would, you know, probably need a little bit more.  He stopped me then and he said, no problem.  He said, take your time, just give me a call let me know how your boy is doing; and if you need any more time, then just let me know, and I'll make it happen, I'll pull vacation time from future years.

Doc. 49, ex. A2 at 239-240.

Plaintiff was absent from work for approximately eight days, apparently on an annual leave basis, around the time of his son's surgery. He briefly returned to work in May of 2002 but then embarked upon an extended leave of absence from May 17, 2002, until the end of August 2002, based at least partly on Arnez's need for continued medical attention. (Pl. Dep. 243:1-3).

At least initially, Plaintiff would visit Arnez approximately one weekend a month; he would spend the weekend in Pensacola, seeing not only Arnez but his other children who were in the area. Doc. 49, ex. A1 at 164-65. During this time, Plaintiff would help with rudimentary nursing duties and with making healthcare decisions and purchasing medical supplies. Doc. 55, ex. 1. In July, 2002, the Florida Department of Revenue, acting apparently on information it had received from Defendant, informed Ms. Shoemaker that Plaintiff had voluntarily quit his job and had been terminated.[1] This evidently upset Ms. Shoemaker and prompted her to prohibit Plaintiff from seeing Arnez. Plaintiff did not see Arnez from mid-July until the end of August, 2002.

Plaintiff called the company to get clarification on his employment, and he spoke with George Conner who informed Plaintiff that he was still listed on the company computer as an employee on leave. Plaintiff confirmed this through Lydia Lawless, a logistics scheduler for Defendant, and also by personally checking the company's internet site.

---

[1] It is not clear from the record how the Florida Department of Revenue had received this information and why it relayed the information to Ms. Shoemaker.

In the latter portion of August, 2002, Plaintiff decided that he could return to work. He attempted to contact Reuter to get placed back on the work schedule.  Reuter initially failed to return his phone messages but on August 30, 2002, he spoke with Plaintiff and informed him that he had been terminated, effective May 25, 2002.  Reuter explained that there must have been a misunderstanding but that Plaintiff was deemed to have abandoned his job, apparently after another trucking company had called Defendant asking for a work reference for Plaintiff.

## II.  MOTION FOR SUMMARY JUDGMENT

### A.  Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  "[T]he substantive law will identify which facts are material" and which are irrelevant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  *See id.*

At the summary judgment stage, a court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of fact exists for trial. *See id.* at 249, 106 S. Ct. at 2510–11.  A genuine issue exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party.  *See id.*  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust Co. v. Fidelity and Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993).  The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S. Ct. at 2511.  "A mere 'scintilla' of evidence supporting the . . . [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment.  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512).

**B. Discussion**

In Count Three of the complaint, Plaintiff claims that Defendant violated his rights under the FMLA by terminating his employment while on leave, and in doing so retaliated against him for exercising his right to FMLA leave.

The FMLA entitles an employee to take up to twelve workweeks of leave in any twelve-month period "in order to care for . . . a son . . . of the employee, if such . . . son . . . has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). Generally, to establish a claim of interference with his right to FMLA leave, an employee must show that he was denied an available benefit under the FMLA or was not allowed to return to his position following the exercise of FMLA leave. *See* 29 U.S.C. § 2614(a)(1); *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001); *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353-54 (11th Cir. 2000). To make out a retaliation claim, the employee must additionally demonstrate a discriminatory animus behind the adverse employment action. *Strickland*, 239 F.3d at 1207. To establish a prima facie case of discriminatory animus, the employee must show a causal connection between the protected activity and the adverse employment decision. *See Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000).

In its summary judgment motion, Defendant asserts that Plaintiff cannot sustain his claim that he was entitled to FMLA leave because he was not truly "needed to care for" his son. *See* 29 C.F.R. § 825.116. Although an employee may qualify for FMLA leave even if

he is only needed to provide psychological comfort or reassurance for the child, to provide transportation to the doctor, or to fill in for others who are providing primary care for the child, *see id.*, Defendant contends that Plaintiff's limited amount of visitation or involvement with his son was too slight to merit eligibility for FMLA leave.

Had Defendant denied or curtailed the amount of FMLA leave to Plaintiff at the time Plaintiff requested it (and had Plaintiff decided to challenge that decision in court), the Court might need to resolve whether the amount of care provided by Plaintiff was sufficient to establish a genuine issue of fact.[2]  However, it does not appear that Defendant even began questioning of the appropriateness of FMLA leave until after Plaintiff's termination, and perhaps after this lawsuit was filed.

As federal regulations require:

> In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee as provided in this section. . . . The employer's designation decision must be based only on information received from the employee or the employee's spokesperson . . . .  In any circumstance where the employer does not have sufficient information about the reason for an employee's use of paid leave, the employer should inquire further of the employee or the spokesperson to ascertain whether the paid leave is potentially FMLA-qualifying.

29 C.F.R. § 825.208(a).  The employee need not expressly state that he is requesting FMLA leave; all that is required is that he make the employer aware "that his absence is due to a potentially FMLA-qualifying reason."  *Strickland*, 239 F.3d at 1208-09 (quoting *Gay v.*

---

[2] Defendant concedes that there is at least a factual dispute as to whether Plaintiff requested and was granted FMLA leave.

*Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997) and citing 29 C.F.R. § 825.303(b));
*see also* 29 C.F.R. § 825.208(a)(2).  It remains the employer's burden to ascertain whether
the requested leave qualifies under the FMLA.  *Id.* at 1209.

As can be seen from the record, Defendant's actions failed to measure up to these
standards.  Especially when read in a light favorable to Plaintiff, the record shows that
Plaintiff considered himself to be on FMLA leave, and that Defendant was fully aware that
Plaintiff's request for leave, if not outright identified as under the FMLA, was for an FMLA-
qualifying reason.  Had Defendant harbored any doubts about the legitimacy of the FMLA
leave, it should have further investigated into the matter at that time.  Defendant's efforts to
retroactively declassify Plaintiff's leave as non-FMLA leave are unavailing.  Rather, the
Court must conclude that genuine issues of fact remain as to whether Plaintiff legitimately
exercised his right to FMLA leave and was thereafter refused reinstatement.  Furthermore,
given the fact that Defendant was fully aware that Plaintiff's leave was FMLA-qualifying
and that Plaintiff was terminated immediately after his intended return from leave, or perhaps
even during his time on leave, the Court must similarly conclude that Plaintiff's termination
during or following his exercise of FMLA leave was retaliatory.  *See Brungart v. BellSouth
Telecomm. Inc.*, 231 F.3d 791, 798-99 (11th Cir. 2000) (absent evidence that employer had
no knowledge of the FMLA leave, close temporal proximity between the taking of the leave
and the adverse employment decision suffices to establish circumstantially a retaliatory

motive); *see also Strickland*, 239 F.3d at 1208-09.  Accordingly, summary judgment will be denied as to Plaintiff's two FMLA-based claims.

In Counts One and Two, Plaintiff claims that Defendant violated his rights to equal protection under Title VII and the Florida Civil Rights Act (FCRA) because his termination was discriminatory with respect his race as an African American.

Under the well-established three pronged standard of proof,[3] an employee has the initial burden of establishing a *prima facie* case of disparate treatment in the workplace. Circumstantially, the plaintiff must show that "(1) she belongs to a protected class; (2) she was subjected to adverse job action, (3) her employer treated similarly situated employees outside her classification more favorably, and (4) she was qualified to do the job." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999).  The burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory explanation for the adverse action. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973).  If the employer does so, the burden shifts back to the employee to show that the reason offered by the employer was not the real reason for the adverse employment action but merely pretext. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997), *cert. denied*, 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998).  The employee largely accomplishes this by demonstrating either that the discriminatory motive more likely caused

---

[3]  Because the FCRA was patterned after Title VII, the substantive provisions of those Acts are considered identical, and courts interpreting the FCRA are directed to refer to cases cited under Title VII. *See, e.g., Brand v. Florida Power Corp.*, 633 So.2d 504, 509 (Fla. 1st DCA 1994); *Florida Dep't of Community Affairs v. Bryant*, 586 So.2d 1205 (Fla. 1st DCA 1991).

the adverse action or that the employer's explanation for the adverse action is "unworthy of credence."  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095, 67 L. Ed. 2d 207 (1981).

Plaintiff claims discrimination as follows:

Other white coworkers of plaintiff have taken up to a year off of unprotected leave.  None of these non-African-American individuals have had any adverse employment action taken against them.  In terminating plaintiff for taking FMLA protected leave, defendant treated plaintiff than other similarly situated non-African-American employees.  A determinative factor in defendant's decision to terminate plaintiff was his race.

Doc. 2, complaint at ¶¶ 15-17.

Thus, the only nexus Plaintiff draws between Defendant's actions and any discriminatory animus is that other non-African-Americans were allowed to take similar extended periods of leave without consequence.

In his deposition testimony, Plaintiff identified three white employees who were allegedly treated differently than he.  Defendant points out, however, that these employees were not similarly situated.  One employee left his job with the company, later re-applied for employment, and then was rehired as a new employee without any recognition of his prior seniority.  Doc. 49 at ¶ 20. While Plaintiff states that the other two employees were allowed leaves of absence to attend to other business ventures, Defendant shows that they took no leaves of absence but simply tended to their other interests during their ordinary time off from work.  *Id.* at ¶ 21.

Perhaps in recognition of his inability to counter Defendant's assertions, Plaintiff shifts the focus to other alleged bases for discrimination, namely, to his own deposition testimony that an unidentified white male was hired in Plaintiff's stead, that a supervisor had made a derogatory comment about blacks being lazy, and that white employees were deemed "on the clock" during the unloading process of the trucks while plaintiff was not.  These allegations are not only unsubstantiated and conclusory but also not fairly alleged in the complaint, and accordingly the Court grants them little weight.  Based on the record evidence, the Court finds that no prima facie case of discrimination is established.

### III. SUMMARY

The Court's ruling in this matter may be summarized as follows, and **IT IS HEREBY ORDERED:**

1.     Defendant's motion for summary judgment (doc. 48) is **GRANTED** as to Counts One and Two of the complaint and **DENIED** as to Count Three of the complaint.

**ORDERED** on this 16th day of August, 2005.

s/*L. A. Collier*
_____
Lacey A. Collier
Senior United States District Judge
